**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **SEBASTIEN TORTELLI and STEPHANIE TORTELLI,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**EQUITRUST LIFE INSURANCE COMPANY**<br><br>**Defendant.** | **CASE NO. 4:23-CV-00042-SMR-SBJ**<br><br>**FIRST AMENDEDPETITION AT LAW & JURY DEMAND** |

**COME NOW,** Plaintiffs Sebastien Tortelli and Stephanie Tortelli, pursuant to Fed. R. Civ. P. 15(a)(1)(b) and for their amended cause of action against Defendant Equitrust Life Insurance Company, and states as follows[1]:

**PARTIES, VENUE, AND JURISDICTION**

1. At all relevant times hereto, Plaintiffs Sebastien Tortelli and Stephanie Tortelli (the "Tortellis") were residents of the Country of France.
2. At all relevant times hereto, Defendant EquiTrust Life Insurance Company ("Equitrust") is a company incorporated under the laws of Iowa.
3. Venue is proper pursuant to Iowa Code § 616.18.

[1] On February 9, 2023, Defendant filed a currently pending motion to dismiss. On March 2, 2023 the undersign counsel spoke with counsel for the Defendant and the parties agreed that the pending motion to dismiss is mooted by this amended petition and the Defendant may file a new and/or renewed motion to dismiss in response to this amended petition.

4. The amount in controversy exceeds the minimum jurisdictional amounts for maintaining an action in the Iowa District Court for Dallas County, Iowa.

**FACTS**

5. Between 2013 and 2014, the Tortellis were residents of the State of California.
6. While the Tortellis were residents of California, the Tortellis received insurance services from a husband and wife couple by the name of Steven Gordon and Amy Gordon.
7. Equitrust is a life insurance company, that as part of its business sells annuity contracts.
8. In 2013 and 2014, Steven Gordon and Amy Gordon were approved Agents of Equitrust to sell Equitrust Insurance products, including annuity contracts.
9. In 2013 and 2014, the Tortellis purchased the following Equitrust Annuity products through Amy Gordon as IRA rollovers:
   a. 03/06/2013 Annuity purchased by Sebastien Tortelli for $200,000
   b. 03/07/2013 Annuity purchased by Stephanie Tortelli for $200,000
   c. 06/09/2014 Annuity purchased by Stephanie Tortelli for $90,000
   d. 06/09/2014 Annuity purchased by Sebastien Tortelli for $90,000
10. Pursuant to the annuities purchased by the Tortellis, Equitrust would provide certain services for the Tortellis and would guarantee certain returns on the money provided.
11. The services that Equitrust were to provide to the Tortellis were to ensure that the Tortellis' account activity was suitable for their needs, appropriately

monitor the Tortellis' accounts, prevent fraudulent activities on their accounts, provide contractual returns on the Tortellis' monies, and allow the Tortellis' to make authorized partial surrenders/withdrawals from their annuities.

12. Additionally, Equitrust would also provide the service of providing statement values at least annually, which would include the amount of premiums paid, the amount of any partial surrenders, the dates of any partial surrenders, the accumulation value and the cash surrender value.

13. Equitrust services also included providing notice account activity through the US Mail.

14. On May 16, 2016, Equitrust terminated its agency agreement with Steven Gordon, however, Amy Gordon's agency agreement remained in place.

15. On or about October 19, 2016, Steven Gordon had his license to act as an accident and health agent, and life-agent revoked in the State of California and was issued a restricted California license.

16. The allegations against Steven Gordon resulting in his restricted license, included allegations that he was listing a client address as his home address so that all statements from the insurance company would be directed to him rather than the client.

17. The allegations against Steven Gordon were accessible to the public when they were posted on or about April 29, 2016.

18. In 2016, the Tortellis returned to their home country of France.

19. Beginning in December 2016, Steven Gordon, acting as a representative of Equitrust's agent Amy Gordon, began systematically withdrawing funds from the Tortellis previously referenced annuity accounts.
20. Steven Gordon's partial surrenders/withdraws, through Amy Gordon, were done without the knowledge and consent of the Tortellis.
21. Steven Gordon's partial surrenders/withdraws, through Amy Gordon, continued throughout 2017, 2018 and 2019.
22. Steven Gordon's partial surrenders/withdraws were submitted to and processed by Equitrust at its Des Moines, Iowa offices.
23. The activity on the Tortellis accounts were not flagged as suspicious by Equitrust until 2019.
24. Steven Gordon used the Equitrust partial surrender services and the money deposited by the Tortellis held by Equitrust to facilitate his fraudulent activities.
25. Steven Gordon also used Equitrust's mailing services to have all mail related to the Tortelli's annuities (including annual statements and statements regarding partial surrenders) be sent directly to him and/or his wife.
26. By the time that the Tortellis accounts were flagged by Equitrust as suspicious due to unusual activity, Steven Gordon had withdrawn hundreds of thousands of dollars from the Tortellis annuity accounts.
27. In August 2021, Steven Gordon was criminally charged by the State of California with over twenty counts of various indictable and felonious fraud

and theft charges, which pertained in part, to the monies taken from the Tortellis.

## COUNT I: NEGLIGENCE

**(Withdrawn Without Prejudice and May be Reasserted After Fact Discovery)**

## COUNT II: BREACH OF FIDUCIARY DUTY

**(Withdrawn Without Prejudice and May be Reasserted After Fact Discovery)**

## COUNT III: BREACH OF CONTRACT

28. The Tortellis reassert all paragraphs as if asserted herein.
29. The Tortellis were the owners of several Equitrust annuities.
30. The Equitrust annuities were written contracts between the Tortellis and Equitrust.
31. Pursuant to the terms of the contract, the Tortellis would provide Equitrust with certain monies and Equitrust would provide a substantial return on the monies provided.
32. Equitrust has breached the terms of the contract and allowed the annuities to be significantly diminished by one of its former agents, Steven Gordon.
33. The Tortellis have performed all of their obligations under the contract.
34. Due to Equitrust's breach of the annuity agreements, the Tortellis have suffered damages.

**WHEREFORE**, the Tortellis respectfully requests that the Court enter judgment in their favor and against Defendant Equitrust for breach of contract, and award damages, and such further relief as the Court deems just and proper.

## COUNT IV: VIOLATION OF IOWA CODE CHAPTER 706A

35. The Tortellis reassert all paragraphs as if asserted herein.

36. The Tortellis purchased several annuities from Equitrust.

37. Pursuant to the terms of the annuity agreements, Equitrust was to remain in control of the Tortellis' monies for a specified period of time with the expectation of providing a large return of the Tortellis' monies after a specified period of time.

38. Pursuant to the annuities purchased by the Tortellis, Equitrust would provide certain services for the Tortellis and would guarantee certain returns on the money provided.

39. The services that Equitrust were to provide to the Tortellis were to ensure that the Tortellis' account activity was suitable for their needs, appropriately monitor the Tortellis' accounts, prevent fraudulent activities on their accounts, provide contractual returns on the Tortellis' monies, and allow the Tortellis' to make authorized partial surrenders/withdrawals from their annuities.

40. Additionally, Equitrust would also provide the service of providing statement values at least annually, which would include the amount of premiums paid, the amount of any partial surrenders, the dates of any partial surrenders, the accumulation value and the cash surrender value.

41. Equitrust services also included providing notice account activity through the US Mail.

42. The services that Equitrust provides are not specific to the Tortellis, but instead are the types of services that are available to all of Equitrust's customers.

43. Specifically, as part of the services provided by Equitrust, contract owners are allowed to make partial surrenders of the monies held by Equitrust.

44. The partial surrender service offered by Equitrust involves an annuity holder submitting a Partial Withdrawal/Surrender Form to Equitrust indicating what amounts are to be withdrawn from the money being held by Equitrust and what, if any tax withholdings may be elected.

45. Equitrust then processes the request and issues the partial surrender.

46. As part of this service, Equitrust is to attempt to verify the request, ensure it is not fraudulent and ensure that it is suitable for the requestor.

47. Equitrust services would also include mailing notice to the customer to notify the customer that the partial surrender had occurred.

48. Equitrust's actions are further guided by the applicable laws regarding insurance companies and administrative codes, which in this case are both Iowa and California.

49. Iowa Code Section 706A.5 provides:

> 5. Negligent empowerment of specified unlawful activity.
>
> a. It is unlawful for a person to negligently allow property owned or controlled by the person or services provided by the person, other than legal services, to be used to facilitate specified unlawful activity, whether by entrustment, loan, rent, lease, bailment, or otherwise.

50. From December 2016 through and including 2019, Steven Gordon engaged in a scheme whereby he would use Equitrust's services and submit false partial surrender/withdrawal requests to Equitrust to remove money from the Tortellis accounts.

51. The partial surrender/withdrawal requests submitted by Steven Gordon were done without the knowledge and consent of the Tortellis.

52. The money received from the partial surrender/withdrawal requests went to Steven Gordon and not the Tortellis.

53. Further, Steven Gordon directed all of the Tortelli's mail correspondences from Equitrust be directed to his wife's, Amy Gordon, office, while she remained an agent for Equitrust.

54. While Equitrust was required to send annual statements of the annuity accounts to the Tortellis under the contract, the annual statements were not going to the Tortellis, but instead were going directly to the Gordons to perpetuate the fraud.

55. Gordon facilitated this fraud by continuing to use Equitrust services and changed the mailing address of the Tortellis to an address connected to himself and/or his wife and putting phone numbers associated with himself and/or his wife as phone numbers for the Tortellis.

56. Equitrust was aware of the addresses and phone numbers affiliated with Steven Gordon and his wife because his wife was an licensed agent of Equitrust.

57. The total amount of money received by Steven Gordon from the Tortellis accounts totaled several hundreds of thousands of dollars.

58. In addition to the money removed from accounts from the Tortellis, Steven Gordon performed similar unauthorized withdraws from Equitrust annuities owned by at least one other individual.

59. Steven Gordon performed all of his actions through, or acting on behalf of, Equitrust's Agent Amy Gordon.

60. Steven Gordon performed all of his actions by using Equitrust services, including Equitrust's partial surrender procedure and services.

61. Steven Gordon's actions were indictable and felonious criminal acts under the laws of California.

62. Steven Gordon's actions constitute "specified" unlawful activity" under Iowa Code Section 706A.1(5).

63. Equitrust negligently facilitated Steven Gordon to engage in specified unlawful activity by allowing him to use Equitrust services to complete partial surrenders from the Tortellis' annuity accounts managed by EquiTrust.

64. Equitrust's negligent services that facilitated Steven Gordon's actions include, but are not limited to:

    a. Failing to ensure that the Tortellis' account activity was suitable for the Tortellis;

    b. Failing to appropriately monitor the Tortellis' accounts;

    c. Failing to prevent fraudulent activities of the Tortellis' accounts;

d. Failing to act in a manner consistent with industry standards;

e. Failing to ensure that Equitrust's agents were appropriately trained and monitored;

f. Failing to have knowledge regarding the employment history and alleged violations of their agents, agents' employees, and specifically Steven Gordon;

g. Failing to question the partial surrenders/withdraws from the Tortellis' accounts;

h. Failing to investigate the partial surrenders/withdraws from the Tortellis' accounts;

i. Failing to prevent all mailed notices going directly to Steven Gordon and/or Amy Gordon.

j. Equitrust is also negligent and negligent per se for violating Cal. Ins. Code §§ 10509.910 to 10509.918; Cal. Ins. Code §§ 790 to 790.10; Cal. Ins. Code §§ 759 to 764; Cal. Ins. Code §§ 1621 to 1758.994 (1959/2016); Cal . Code Regs. Tit. 10 §§ 2186 to 2188.83 (2006/2014); § 260.204.9 (2012); Bulletin 2009-7 (2009); Bulletin 2014-6 (2014); and 2011 California Code, Division 2, Article 9. Suitability Requirements for Annuity Transactions, Section 10509.914 and Section 10509.916; and

k. Equitrust is also negligent and negligent per se for violating Iowa Admin. Code r. 191-15.72 to 191.15.78; Iowa Admin. Code r. 191-15.8 (1963/2009); Iowa Admin Code. R. 191-33.3 (1984/1999); Bulletin 2007-

5 (2007); Bulletin 2009-4 (2009); Iowa Code §§ 507B.1 to 507B.14 and Iowa Admin. Code r. 191-15.11 (2011); Bulletin 13-07 (2013); Bulletin 2014-2 (2014); Iowa Code §§ 522B.1 to 522B.18 (2002/2014) and Iowa Code § 508E.3 (2000/2009); Iowa Admin. Code. R. 191-10.1 to 191-10.25 (1963/2009); Iowa Admin Code r. 191-11.2 (2009); Iowa Admin Code r. 191-12 (2009).

65. As a result of Equitrust's negligent actions, it is in violation of Iowa Code Section 706A.2(5).

66. Equitrust's negligent actions and violation of Iowa Code Section 706A.2(5) is the proximate cause to the Tortellis' damages.

67. The Tortellis have sustained the following injuries and damages, including but not limited to:

   a. Loss of money stolen from them

   b. Payment of penalties and excess taxes; and

   c. Loss of growth of assets and expected returns.

68. As a result of Equitrust's violations of Iowa Chapter 706A, the Tortellis are entitled to reasonable attorney's fees and litigation expenses.

69. As a result of Equitrust's violations of Iowa Chapter 706A, the Tortellis are entitled to treble damages.

70. In addition to the monetary relief described above, the Tortellis seek injunctive relief pursuant to Iowa Code Chapter 706A.

71. Specifically, the Tortellis request that this Court enter an order enjoining Equitrust from engaging in similar actions again, enter an order ensuring Equitrust has appropriate safeguards and procedures in place to ensure that similar behavior is prohibited in the future, and any other relief the Court deems necessary.

72. Contemporaneous with the filing of this petition, the Tortellis are providing notice of this petition to the Iowa Attorney General's office.

**WHEREFORE**, the Tortellis respectfully requests that the Court enter judgment in their favor and against Defendant Equitrust for violations of Iowa Chapter 706A, and award damages, reasonable attorneys fees, injunctive relief and such further relief as the Court deems just and proper.

**JURY DEMAND**

The Tortellis requests a jury trial of all issues contained herein so triable in this action.

Respectfully Submitted,

Matthew G. Sease # AT0010484
Sease & Wadding
104 SW 4th St. Suite A
Des Moines, IA 50309
msease@seasewadding.com
Ph: (515) 883-2222
Fax: (515) 883-2233
ATTORNEY FOR PLAINTIFF

Original E-Filed

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

/s/ *Matthew G. Sease*